ALONZO CORA, by GLORIA CORA, his mother and next friend, Plaintiff-Appellee, *v.* CHICAGO HOUSING AUTHORITY, Defendant—(INDUSTRIAL PATROL SERVICE, Defendant-Appellee, and GUST K. NEWBERG CONSTRUCTION Co., Defendant-Appellant.)

(No. 53361; )

First District—February 23, 1971.

24

Joseph Bailey, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago, (Ashman & Jaffee and Ed A. Berman, of counsel,) for appellee.

Mr. JUSTICE McCORMICK delivered the opinion of the court:

Alonzo Cora, plaintiff [a minor], was alleged to have been injured by a falling pipe when he was on a construction site collecting pop bottles which he intended to return for cash. Plaintiff brought an action for damages against Gust K. Newberg Construction Co. [Newberg], and Industrial Patrol Service [Industrial], defendants. Newberg brought a counterclaim against Industrial, seeking indemnity from Industrial. In its counterclaim Newberg alleged that if it was guilty of any negligence it was passive, and that if negligence was the cause of the injury in question, it was the active negligence of Industrial.

Plaintiff and his witnesses [minor companions of plaintiff at the construction site] testified that a guard had given them permission to come upon the property. Witnesses for Industrial, who were other minor companions present at the time of the incident, testified that they, along with plaintiff, entered the premises through an opening in the fence which enclosed the site. However, there was disagreement among these witnesses as to the location and nature of the occurrence.

At the conclusion of the trial in the Circuit Court of Cook County, the jury returned a verdict finding defendant Newberg liable for damages in the sum of $5,250, and finding no liability as to defendant Industrial. Furthermore, the court entered an order granting Industrial's motion for directed verdict to Newberg's counterclaim.

It was brought out at the trial that plaintiff's injuries were sustained at the construction site of the Robert Taylor Homes on Sunday, September 17, 1961, between 2:00 and 3:00 P.M., where plaintiff and his com-

panions were collecting bottles. Plaintiff testified that although there was a fence surrounding the area, he and his friends were able to enter the property by gaining permission from a Negro guard who was allegedly standing at the gate. Gloria Cora, plaintiff's mother, testified that she had given her son permission to go to the construction site.

Ray Cora, plaintiff's brother, was called as a witness on behalf of plaintiff. He stated that he was with plaintiff on the day in question; that there was a Negro guard standing inside the gate; that he heard the plaintiff ask the guard if they could enter, and the guard said they could, but that they should not go inside the buildings.

Oscar Peterson, another witness called by plaintiff, testified that on the day in question there was a guard standing at the gate.

Rodney Daniels testified on behalf of Industrial that on the date in question he accompanied plaintiff to the project, but that they entered through a section of fence which had been rolled back to permit access to trucks. He stated that there was no guard at the entrance when they went in.

Industrial also called Verne Hayes, Johnny King, and Arlis Robinson to testify. Hayes was an employee of Industrial, where his duties consisted of instructing and supervising the guards, and occasionally visiting the construction site. He testified that on September 17, 1961, the guard on duty between 8:00 A.M. and 4:00 P.M. was Arlis Robinson, a white male, approximately six feet all, and weighing about 180 pounds. Robinson testified that he was the only guard assigned to the Taylor Homes at the time of the incident, and that he had not given any children permission to enter the site.

Johnny King testified that he had gone with plaintiff to the project; that they entered through a hole in the fence; and that he did not see or hear the plaintiff ask a guard for permission to enter, nor did he see any guards in the area.

Although there appears to be no doubt that a pipe actually fell on plaintiff's leg, and that he was on the construction site at the time, there is nothing in the record to show what caused the pipe to fall or from where it fell.

The contentions raised by Newberg are:

1). "It was not foreseeable that plaintiff would come upon the premises, since the record indicates that his motive in so doing was pecuniary;

2). The fact that plaintiff's mother allowed him to come to the project constituted an intervening cause which would preclude any negligence being the proximate cause of plaintiff's injury;

3). The hypothetical question permitted to be asked of plaintiff's medical expert was improper;

4). The conflicting testimony regarding the occurrence would indicate that the verdict was the result of mere speculation."

■■ We disagree with the argument that plaintiff's motive for going to the site precludes a finding that Newberg could reasonably have foreseen plaintiff's presence there. As a general rule, infants have no greater right to go upon the land of another than do adults, and their minority imposes no duty upon occupiers of land to expect them or to prepare for their safety. (*Burns v. City of Chicago*, 338 Ill. 89.) However, in situations where an occupier or possessor of land knows or should know that young children frequent an area where a dangerous instrumentality is located, because of their immaturity and inability to appreciate the risks involved, there is a duty imposed upon the owner or occupier to protect children from such risks. *Wagner v. Kepler*, 411 Ill. 368.

■■ In *Henry v. Kettell Const. Corp.*, 44 Ill.App.2d 356, at 359 the court states:

"Once an infant of tender years because of his immature judgment and inability to appreciate certain conditions is attracted and allured to the premises, he is no longer a trespasser but is to be regarded as an invitee. (*Kahn v. James Burton Co.*, 5 Ill.2d 614, 126 N.E.2d 836.) In such case, there is a duty upon the owner or other person in possession and control of the premises to which the child is allured to exercise due care so as not to negligently injure him while he is upon the premises. *Ramsay v. Tuthill Bldg. Material Co.*, 295 Ill. 395, 129 N.E. 127; *City of Pekin v. McMahon*, 154 Ill. 141, 39 N.E. 484."

As stated in *Kahn v. James Burton Co.*, 5 Ill.2d 614, 625, "The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm of the child."

■■ Newberg argues that the presence of children on the premises could not be anticipated because it could not foresee them coming there for the purpose of collecting bottles. With this argument we cannot agree. The basis of the liability is the anticipation of harm to a child; not that he might come to the premises for a reason other than that anticipated. Under the rule set out in *Kahn*, the reason for the children's presence is irrelevant so long as their presence there is foreseeable. When an occupier of land knows or should know that children are present and exposed to danger, the test of the *Kahn* case is satisfied because it is foreseeable that children, being exposed to dangerous agencies, may be injured.

■■ Newberg also argues that since the plaintiff was given permission

by his mother to go on the premises, an intervening cause arises. However, Newberg failed to raise this point at the time of the post-trial motion, and consequently is precluded from raising it now. Section 68.1(2) of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, par. 68.1(2)) provides in pertinent part:

"Relief desired after trial in jury cases, heretofore sought by reserved motions for directed verdict or motions for judgment *non obstante veredicto*, for judgment notwithstanding the verdict, in arrest of judgment or for new trial, must be sought in a single post-trial motion * * *. The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief * * *. A party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion."

Since the record does not show that this point was raised in Newberg's post-trial motion, we must consider the point waived. *Perez v. Baltimore and Ohio R. Co.*, 24 Ill.App.2d 204; *Handler v. Eckhouse*, 45 Ill.App.2d 382; *Moss v. Wagner*, 27 Ill.2d 551; *Richman Chemical Co. v. Lowenthal*, 16 Ill.App.2d 568.

■■ Concerning Newberg's argument that the hypothetical question asked of the medical expert was improper, Newberg is precluded from now raising this objection. It was contended in its brief that the question was improper because it failed to incorporate all the facts necessary for the expert to consider. At the time of Newberg's post-trial motion two theories were advanced in support of the objection to the question. The theory now being urged by Newberg, however, was not one of those brought forth in the trial court, and must therefore be considered waived. See Ill. Rev. Stat. 1965, ch. 110, par. 68.1(2).

■■ Newberg's fourth argument is that the verdict of the jury was the result of mere speculation. Newberg contends that it had not known that children had ever been on the construction site for the purpose of collecting bottles or for any other reason. It further argues that in view of the conflicting testimony of the witnesses, the jury could not have reached a verdict on the basis of anything but speculation. Although the record indicates there were two conflicting explanations of how the children gained entrance to the premises, there appears to be no doubt that they were there on the day in question and had been there on numerous previous occasions. Assuming, for the sake of argument, that Newberg did not have actual knowledge of the children's presence, this would not preclude liability since it should have known the children might frequent the area.

At the trial two factual issues were raised by Newberg: how the children gained entrance to the site, and whether or not their presence there was foreseeable to Newberg.

■■ The mere fact that there were two conflicting stories presented by the witnesses will not of itself warrant a reversal. It has long been the rule in Illinois that a court of review will not disturb the findings of a jury unless the verdict is against the manifest weight of the evidence. Unless the reviewing court is able to say that there is no evidence which fairly tends to support the verdict, the verdict must stand. In *Buer v. Hamilton*, 48 Ill.App.2d 171, at 175 the court said:

"It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which is considered most reasonable. The conclusion, whether it relates to negligence, causation, or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. *Tennant v. Peoria and P. U. Ry. Co.*, 321 U.S. 29, 88 L.Ed. 520; *Stilfield v. Iowa-Illinois Gas & Elec. Co.*, 25 Ill.App.2d 478; 167 N.E.2d 295; *Dowler v. New York Cent. & St. L. R. Co.*, 5 Ill.2d 125, 125 N.E.2d 41; *Pitrowski v. New York Cent. & St. L. R. Co.*, 4 Ill.2d 125, 122 N.E.2d 262."

■■■ In the case before us four witnesses testified to facts which supported the conclusion reached by the jury that Industrial was not negligent Furthermore, there was ample evidence presented from which the jury could draw the inference that Newberg had either known or should have known that children were frequenting the construction site and were therefore exposed to possible danger.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

LEIGHTON, P. J., and STAMOS, J., concur.