400

SOPHIE WOZNIAK, Plaintiff-Appellant, *v.* LOUIS SEGAL *et al.*, Defendants-Appellees.

(No. 53118;

First District (5th Division)—November 14, 1975.

Arthur Aaron Ellis and Morris William Ellis, both of Chicago (Ellis & Ellis, of counsel), for appellant.

Neil K. Quinn, of Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

■■ This matter was remanded for our consideration following the supreme court's opinion in *Wozniak v. Segal,* 56 Ill.2d 457, 308 N.E.2d 611, reversing and remanding our former decision (7 Ill.App.3d 900, 289 N.E.2d 116) in which it was held that where the manifest weight of the evidence was not in question, the court was "conclusively bound" by the special finding that plaintiff was guilty of contributory negligence. The supreme court, in reversing, held that an appellate court had the power to investigate the contentions raised to assure a just result and remanded the case for this court to consider whether the cumulation of errors alleged rendered the jury's verdict unjust.

We construe the supreme court's decision to mean that we are to determine whether the alleged errors denied plaintiff a fair trial by having a prejudicial influence on the jury's finding, either generally for defendants or specifically that plaintiff was guilty of contributory negligence. After examining each point individually and all the points in their totality, we conclude that any cumulation of error was not such as to deprive plaintiff of a fair trial and that justice does not require a new trial. The facts are summarized in our former opinion and will be repeated only as necessary to examine the points raised.

Plaintiff initially contends that error resulted during the testimony of the investigating police officer, a witness for plaintiff, who stated that skid marks of defendant Steelman's car measured 38 feet and that, immediately following the accident, a braking test on a side street revealed that a hard-braking at 30 m.p.h. left skid marks of 28 feet 10 inches. Plaintiff was thus attempting to show that Steelman was exceeding the speed limit at the time of the accident. On cross-examination, defense counsel attempted to show that a difference in the pavements of the two streets could have a bearing on any opinion as to speed. In doing so, he questioned the officer as to his knowledge of a Northwestern University Traffic Institute publication. The officer denied any knowledge of the publication, and defense counsel then requested the court to take judicial notice of it. Plaintiff argues that this request necessitated an objection which placed her in a bad light because the jurors would believe that she was withholding information from them. At this point, we note that this argument was not raised in the first appeal in this matter and

thus is not properly before us. (See *Taylor v. County of St. Clair*, 57 Ill.2d 367, 312 N.E.2d 231.) Moreover, the document in question was not received in evidence and, although the request that the court judicially notice it was improper, there is considerable doubt that the jury understood the meaning of "judicial notice." Thus, it could just as easily be said that defendants had been placed in a "bad light" by the court's refusal to judicially notice the document. In any event, we fail to see prejudicial error resulting from the remark.

■■ Plaintiff also asserts that defendants' counsel, in closing argument, improperly stated there was a difference in the composition of the two roads and, because there was no evidence to support it, she argues that prejudicial error resulted. We disagree. Plaintiff was asked by her attorney whether there was a difference between the two streets, and she replied, "There was a bumpy, what I would call asphalt." Although she may have referred to both streets, we believe defendants could properly infer that she was indicating one street was different from the other. Furthermore, there were photographs of both streets in evidence from which defendants could draw a similar inference. This argument was within the latitude afforded counsel in commenting on and arguing the facts in evidence. See *Hopwood v. Thomas Hoist Co.*, 71 Ill.App.2d 434, 219 N.E.2d 76.

■■ Plaintiff next contends she was prejudiced by the manner in which defense counsel attempted to impeach her testimony concerning her familiarity with bus transportation. She stated that she rode the bus to and from work and was familiar with this mode of transportation. A witness on the bus from which plaintiff had disembarked just prior to the accident had stated that plaintiff appeared nervous and in a rush and had asked the driver where the Cicero Avenue stop was. In an apparent attempt to impeach plaintiff's assertion that she rode the bus to and from work, defense counsel read from her deposition wherein she stated that she rode to work with her brother who "help me come from Poland." She claims this introduction of her Polish ancestry was not impeaching and was prejudicially improper. Initially, we must disagree with counsel's claim that this indication of plaintiff's immigration from Poland would alienate the jury. We believe it could be argued just as readily, and perhaps more so, that this reference to her ancestry produced a favorable jury reaction. In any event, while we agree that the reference was not impeaching, we note that plaintiff's ancestry had been established earlier in the trial by plaintiff's own counsel during cross-examination of Rita Starr, a passenger on the bus, who stated that she heard plaintiff talking to her son in Polish. Further, plaintiff's foreign extraction was apparent from her own testimony which was in a form

of broken English, indicative of her ethnic origin. We conclude therefore that no prejudice resulted from the reference to her country of origin.

■■ Plaintiff next argues that defense counsel was improperly permitted to "testify" and bolster his witnesses' testimony. Defendants Segal and Steelman had been called by plaintiff under section 60 of the Civil Practice Act as adverse witnesses during plaintiff's case in chief. In the presentation of his case, defense counsel did not deem it necessary to recall them to repeat their testimony and, before resting, he announced to the court in the presence of the jury that he reaffirmed and readopted their testimony given during plaintiff's case. We do not believe this can be construed as actual testimony by counsel or an attempt to bolster the witnesses' testimony, as contended by plaintiff.

■■ Plaintiff also suggests that defendant, in closing argument, improperly stated that the injury to plaintiff's leg was a torsion, or a twisting fracture, opposed to a direct fracture. She contends this was a crucial misstatement, going to the question of defendant's due care and her contributory negligence, because it indicated plaintiff was struck by a glancing blow which caused a twisting of her leg. This was supportive of Steelman's testimony that he was swerving away from plaintiff when she ran into the side of his car; whereas, plaintiff testified to a direct blow from the front bumper of the car. An orthopedic surgeon had testified that a torsion fracture was a twisting injury where the blow spun the person around, and he stated that it was possible plaintiff had a torsion fracture of her leg but that he couldn't make a definitive diagnosis without reading the x-rays, which had been destroyed. In view of the doctor's testimony concerning the possibility of a torsion fracture and Steelman's testimony that plaintiff was struck a glancing blow as he swerved away from her, we believe that it was permissible to infer and argue that plaintiff had suffered a torsion fracture.

■■ Plaintiff next asserts that reversible error was committed when defense counsel, in closing argument, improperly alluded to a CTA accident report made out by the driver of the bus from which plaintiff had alighted. In the report, the driver stated he had witnessed the accident. On cross-examination, plaintiff's counsel showed the driver this report and his time sheet for the sole purpose of ascertaining the date and time of the accident. In his closing argument, plaintiff's attorney pointed out that the driver's time sheet indicated he was some distance away at the time of the accident and thus could not have witnessed it. Defendant's attorney then, after recounting in his closing argument that other witnesses had the opportunity to review their statements, said that the CTA driver had his report "right here in this courtroom along with the trip sheet and it was even in his hand at one moment, for which

he had an opportunity to review." Plaintiff says that this argument magnified "the importance of the accident report and the statements of the witnesses, and irreparably damaged the plaintiff's case and is highly prejudicial * * *." We disagree. In view of the fact that the report had been marked as a plaintiff's exhibit and was used by plaintiff's attorney in his interrogation of the witness, we see no prejudicial error in the comment objected to. Furthermore, we note that there was no objection made to this portion of the argument.

Finally, plaintiff objects to the refusal of her tendered Instructions 3 and 8. The former quoted verbatim from section 27-257 of the Municipal Code of Chicago, stating a driver's duty to avoid colliding with a pedestrian and to give warning by sounding a horn. She argues that it was uncontroverted that no horn was sounded and that the instruction should have been given.

■■ It is our belief that while it would have been more advisable that the instruction be given, we note that plaintiff's Instruction 10, the issues instruction, informed the jury that plaintiff charged defendant was negligent in that he "failed to give any warning or signal"; that plaintiff's Instruction 5 set forth the duty of a driver to avoid colliding with a pedestrian; that plaintiff's Instruction 11 stated a pedestrian's right-of-way at a crosswalk; and that defendant's Instruction 14 described the rights-of-way of pedestrians and motorists at an intersection controlled by traffic lights. Where no prejudice is shown, as is the case here, the refusal of an instruction the content of which is adequately covered by other given instructions is not error. See *Clarke v. Storchak*, 384 Ill. 564, 52 N.E.2d 229.

■■ Concerning plaintiff's refused Instruction 8[1], it is urged that the

---

[1] "There was in force in the State of Illinois at the time of the occurrence in question a certain *Statute* which provided that:

'Driving on Roadways laned for traffic. Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

(a) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

(b) Upon a roadway which is divided into 3 lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when such center lane is clear of traffic within a safe distance, or in preparation for making a left turn or where such center lane is at the time allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and such allocation is designated by official traffic control devices.'

If you decide that a party violated the Statute on the occasion [*sic*] in question, then we may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

instruction should have been given because the evidence showed that Steelman "changed lanes before entering the intersection." The record discloses that Steelman had changed from the second to the third lane when he was about three-quarters of a block from the intersection and that just before the impact he had swerved to the left to avoid striking plaintiff. There was also testimony that the impact occurred in the fourth lane. Thus, it would appear that paragraph (a) of the instruction is applicable to the facts and, had it been offered in a separate instruction, should have been given. It was not so offered and, as the instruction was tendered, it contained surplusage in that paragraph (b) refers to a three-laned road and the two-way movement of traffic with the use of a center lane for overtaking and passing.

This paragraph has no applicability to the facts of this case. A court may properly refuse an instruction containing several propositions, one or more of which are incorrect. (*Nelson v. Fehd*, 203 Ill. 120, 67 N.E. 828.) Inasmuch as Instruction 8 contains matter not applicable to the facts, it was not error to refuse it.

Finally, we note that plaintiff does not contend here that either the general verdict or the answer to the special interrogatory was against the manifest weight of the evidence. In such circumstances, the actions of the jury will not be disturbed where alleged errors are of a non-prejudicial nature. (See *People v. Jones*, 33 Ill.2d 357, 211 N.E.2d 261; *Hann v. Milla*, 95 Ill.App.2d 447, 237 N.E.2d 753.) This is particularly so in the instant case, which was well tried by competent attorneys, where there does not appear to be a close question on plaintiff's negligence inasmuch as four apparently disinterested witnesses testified to facts indicating she started to cross the street against the red traffic control signal.

We conclude that no error or cumulation of errors here renders the jury's verdict against plaintiff unjust, and we affirm the judgment.

Affirmed.

BARRETT, P. J., and LORENZ, J., concur.