GENEVIEVE N. BENTLEY, Adm'r of the Estate of Bonnie Ann Holzhauer, Deceased, Plaintiff-Appellant, *v.* SAUNEMIN TOWNSHIP *et al.*, Defendants-Appellees.

Fourth District   No. 15504

Opinion filed October 18, 1979.—Rehearing denied November 27, 1979.

James Walker, Ltd., of Bloomington, for appellant.

William F. Costigan, of Costigan & Wollrab, of Bloomington, and Thompson, Strong & Blakeman, Ltd., of Pontiac (Kenneth L. Strong, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

On May 16, 1977, plaintiff Genevieve N. Bentley, administrator of the estate of Bonnie Ann Holzhauer, deceased, filed suit in the circuit court of Livingston County against defendants Saunemin Township, its highway commissioner, Livingston County, its superintendent of highways, and Doris Sexton, administrator of the estate of Gerald Holzhauer, deceased, seeking to recover damages for the death of her decedent which resulted from an automobile collision in Livingston County at an intersection of a rural Saunemin Township road and State Route 47 on July 27, 1975. Prior to trial, plaintiff voluntarily dismissed the suit as to defendant Doris Sexton, administrator. After a jury trial ending on May 23, 1978, the trial court entered judgment on a verdict for all defendants and subsequently denied plaintiff's post-trial motion. Plaintiff appeals.

Numerous errors are claimed by plaintiff. We need consider only her

contention that the trial court should have granted her judgment notwithstanding the verdict as to the township defendants. Although the question is close, we agree with plaintiff that she proved as a matter of law that (1) her decedent was in the exercise of ordinary care at the time of the collision, and (2) negligence by the township and its highway commissioner was a proximate cause of the collision. Accordingly, as to those defendants, we reverse and remand directing the trial court grant plaintiff a judgment on the question of liability notwithstanding the verdict and hold a new trial to determine damages.

We need not consider any claim of error as to the judgment on the verdict entered in favor of defendants Livingston County and its superintendent of highways because we find no evidence of a breach on their part of any duty owed to plaintiff's decedent and no claim of error bore on the ability of plaintiff to do so. We affirm the judgment entered in favor of those defendants.

Plaintiff sued both the township and its highway commissioner and both the county and its superintendent of highways with both individuals being sued in their official capacity. All were charged with negligence in highway maintenance. Some confusion exists as to the proper defendant to sue when negligence in highway maintenance is charged against counties or townships. In *Blazer v. Highway Commissioner* (1968), 93 Ill. App. 2d 89, 235 N.E.2d 13, the appellate court held the highway commissioner rather than the township to be the proper defendant to a suit of that nature involving township responsibility. No case has similarly defined the status of the county superintendent of highways. In any event, no objection has been raised here as to improper joinder. For convenience we will speak only of the highway commissioner when referring to township liability. Because some legislation speaks of responsibility concerning highways to be in the county board while other legislation speaks of responsibility being in the county superintendent of highways, we will speak separately of the county and its superintendent of highways.

Plaintiff's decedent was a passenger in an automobile driven by her husband, the decedent Gerald Holzhauer, who was also killed in the collision. The vehicle was traveling in a westerly direction upon the gravel surfaced township road and entered Route 47, a north-south highway, apparently without stopping. In the intersection a collision occurred between the Holzhauer automobile and one coming from the south driven by Patricia Ross.

In civil cases the question of whether a judgment should be entered for a party despite a contrary determination by a jury is governed by *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. Such a judgment should be entered when the evidence viewed in the

light most favorable to the party obtaining the verdict could never stand. This is so even though slight evidence may favor the verdict. *Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 357 N.E.2d 530.

That plaintiff's decedent, a passenger, was in the exercise of ordinary care as a matter of law is not seriously disputed. Nor is it seriously disputed that some governmental entity was negligent in failing to clear a tree from the north side of the township road some 95 feet east of the intersection. The Illinois Department of Transportation or its predecessor had placed a stop sign designed to stop traffic coming from the direction where plaintiff's decedent was traveling as a passenger. The branches of the tree were shown by photographs to extend to the edge of the traveled portions of the road and to hang to the ground. Livingston County Coroner, Keith Von Qualen, testified that this tree prevented the stop sign from being "reasonably visible" to a driver approaching from the east until the driver was within 120 feet of the stop sign.

Defendants do point out that reports of police officers investigating the collision made no mention of any obstructions which they thought might have contributed to the collision and the officers testified that they would have reported such obstructions had they seen any. However, no officer testified to having tried to see the stop sign from an automobile when approaching the intersection from the east on the township road at a point east of the tree. The State of Illinois Department of Transportation Manual entitled "Signing of Road District and Township Highways" was shown to state in part:

> "Special care should be taken to see that weeds, shrubbery, construction materials, and snow are not allowed to hide the face of any sign."

■■ Dr. John Baerwald, director of the University of Illinois Highway Traffic Center, testified that road designers generally plan warning devices assuming a driver has a reaction time of 2.5 seconds. He stated that the average driver had a much faster reaction time but that the 2.5 seconds was used to insure safety. He testified that the National Safety Council considers an average reaction time to be .75 seconds. Dr. Baerwald testified that even assuming a .75-second reaction time, a driver approaching the intersection at 35 miles per hour would not receive enough warning if the sign did not become visible until the driver was within 120 feet of it. He also noted that the road was otherwise of a nature that 45 miles per hour would have been a safe driving speed. To have allowed a situation where a person driving at what would appear to be a safe speed, did not have sufficient view of the stop sign to make a timely stop after seeing it was clearly negligence as a matter of law.

The heart of the dispute as to whether judgment notwithstanding the verdict should have been entered against the highway commissioner turns

upon whether the evidence proved as a matter of law that (1) he was under a duty to clear the obstruction from the right-of-way, and (2) his failure to do so was a proximate cause of the collision.

The highway commissioner maintains that the exclusive duty to provide for the visibility of the sign was placed by statute on the Illinois Department of Transportation. He relies upon the following provision of the Illinois Vehicle Code which states:

"Section 11—303. The Department to place signs on all State highways.

(a) The Department shall place and maintain such traffic-control devices, conforming to its manual and specifications on all highways under its jurisdiction as it shall deem necessary to indicate and to carry out the provisions of this Chapter or to regulate, warn or guide traffic.

(b) No local authority shall place or maintain any traffic control devices upon any highway under the jurisdiction of the Department except by the latter's permission." (Ill. Rev. Stat. 1977, ch. 95½, par. 11—303(a), (b).)

He also points out that section 2—1.10 of the Illinois Manual on Uniform Traffic Control Devices warns that "special care" should be taken to see that "trees and shrubbery * * * do not obscure the visibility of any sign," thus indicating removal of obstructions to the visibility of a stop sign to be a part of the maintenance of the sign.

■■ The question of the division of responsibility between various governmental agencies for road maintenance is generally one of law for the courts (*Janssen v. City of Springfield* (1979), 69 Ill. App. 3d 986, 388 N.E.2d 426, *appeal allowed* (1979), ___ Ill. 2d ___). Section 6—201.7 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 6—201.7) makes maintenance of township roads a responsibility of its highway commissioner. While section 11—303(a), (b) prohibits the commissioner from placing a stop sign on a State right-of-way or maintaining that sign itself without Department of Transportation permission, we do not deem that section to relieve the commissioner from the duty for clearing obstructions to the viewing of the sign when the obstructions are nearly 100 feet in front of the sign.

On the issue of proximate cause the defendants rely on (1) evidence that Gerald Holzhauer could have seen that he was approaching an intersection from a distance of 300 to 500 feet, (2) evidence that he did not attempt to stop at any time, (3) a theory that he might have been following a car across Route 47, (4) allegations of plaintiff in the dismissed count against Doris Sexton, administrator, that Gerald Holzhauer's negligence "was the proximate cause of the collision" and (5) the jury's answer of "yes" to a special interrogatory asking whether the conduct of Gerald

Holzhauer was "the sole proximate cause of the plaintiff's intestate's death."

If the highway commissioner should have foreseen Gerald Holzhauer's negligence and if his negligence combined with that of Holzhauer to cause the collision, Holzhauer's negligence, although much more proximate in time to the collision, would not be an intervening factor preventing the commissioner's negligence from being a proximate cause of the collision. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205; Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971).) The commissioner should have foreseen that drivers proceeding in a westerly direction on the township road, who would have seen an unobstructed stop sign might, nevertheless, be driving negligently enough that they would fail to observe other indications of an intersection, enter it without stopping, and collide there with a car traveling on the highway. Thus, negligence by Holzhauer could have been the sole proximate cause of the collision, preventing that of the commissioner from being a proximate cause, only if Holzhauer (1) would not have seen the sign even if it were more visible, (2) would not have stopped had he known of the sign or (3) knew of the sign but did not choose to stop.

No evidence indicated that Holzhauer knew of the stop sign because of prior acquaintance with the intersection. He had lived in the area only a short time. At the time in question, he was traveling to the home of a friend to take him to a softball game in which they were both going to play. The friend gave him directions as to how to get to the friend's house. The theory that the Holzhauer car followed another car across the intersection at a fast speed is not supported by substantive evidence. On cross-examination, Ms. Ross, driver of the other car, admitted that 3 weeks after the collision she had made an affidavit to having seen a car pass before her just prior to her being hit by the Holzhauer car. She did not testify that this did in fact happen. The only effect of her prior affidavit would be to impeach her direct testimony. Her admission of making the affidavit was not substantive evidence of the truth of the contents of the affidavit. For Holzhauer to have crossed the intersection without stopping, knowing that he was running a stop sign would have been contrary to "the presumption that all persons observe the instincts of self preservation." (*Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 521, 119 N.E.2d 241, 246.) That Holzhauer would not have seen the stop sign had it not been obscured was extremely unlikely. Plaintiff also is not bound by her allegation in the superseded pleading because the circumstances indicate that allegations concerning proximate cause were made by her as a personal representative and without personal knowledge. (*Galiher v. Spates* (1970), 129 Ill. App. 2d 204, 262 N.E.2d 626; *McCormick v. Kopmann* (1959), 23 Ill. App. 2d 189, 161 N.E.2d 720.)

We find the evidence indicating Holzhauer's negligence to be the sole proximate cause of the collision to be too weak to meet the requirements of *Pedrick* and *Walling.*

The highway commissioner maintains that the jury's answer to the special interrogatory finding Holzhauer's negligence to be the sole proximate cause of the collision is binding upon us because plaintiff neither moved at trial to vacate the answer nor did she object to the answer in her post-trial motion. She did attack the form of the interrogatory in her post-trial motion but did not there directly attack the sufficiency of the evidence to support the answer. A body of appellate court decisions cited by the commissioner seems to support his argument. However, in *Wozniak v. Segal* (1974), 56 Ill. 2d 457, 308 N.E.2d 611, a jury hearing a negligence case rendered a verdict for the defendant and answered a special interrogatory by finding the plaintiff guilty of contributory negligence. The plaintiff's post-trial motion alleged various errors but did not attack the finding of the special interrogatory. The appellate court affirmed, reasoning that the finding of the special interrogatory that the plaintiff was guilty of contributory negligence, not having been attacked in the trial court, was, of itself, sufficient to prevent plaintiff from ever recovering. The answer thus controlled the case and prevented consideration of error. (*Wozniak v. Segal* (1972), 7 Ill. App. 3d 900, 289 N.E.2d 116.) The supreme court, however, reasoned that to prevent appellate review because of the failure to attack the finding of the special interrogatory would have been grossly unjust and reversed and remanded to the appellate court for further consideration.

■■ Plaintiff here argued in her post-trial motion that she was entitled to judgment *n.o.v.* A rule that would have also required her to attack the finding of the special interrogatory to preserve the question of whether she was entitled to judgment notwithstanding the verdict would be an unjust trap for the unwary. We follow *Wozniak* and hold the failure to attack the answer to the interrogatory to have not prohibited us from considering plaintiff's claims on review.

The evidence was undisputed that the Livingston County superintendent of highways never told the defendant township commissioner of his duty to remove unreasonable visual obstructions from the shoulders of the right-of-way of township roads and neither instructed him as to how best to do this nor made inspection to see if he was doing this on the road in question. Plaintiff maintains that the failure to do so constituted a negligent breach of statutory obligations which was a proximate cause of the collision. She cites section 5—101.1 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 5—101.1) which places the "general supervision of all county, township and district highways" in the county government subject to State supervision of those built or maintained with funds. She also points to section 5—205.3 of the Highway

Code (Ill. Rev. Stat. 1977, ch. 121, par. 5—205.3) which at and prior to the time of the collision stated that the superintendent shall:

"Advise the highway commissioners of the road districts in his county, and direct, as otherwise provided in this code, the highway commissioners of the road districts in his county, as to the best methods of construction, repair, or maintenance of township and district roads. * * *."

The requirement for the superintendent to "direct" the highway commissioner is qualified by the phrase, "as otherwise provided in this Code." For instance, under section 6—401 of the Code (Ill. Rev. Stat. 1977, ch. 121, par. 6—401), three landowners of a township may file a petition before the superintendent to direct a highway commissioner to repair a township road. This authority in the superintendent arises only after a hearing on notice. No authority is given the superintendent to impose such an order on the commissioner in the absence of such a request.

■ The provisions of section 5—101.1 placing "general supervision" of various roads including township roads in the county government is similar to section 4—101.1 of the Code (Ill. Rev. Stat. 1977, ch. 121, par. 4—101.1) which places "general supervision" in the Department of Transportation over most highways in the State built or maintained in whole or in part by State funds. We do not interpret the phrase "general supervision" to mean the explaining to each local highway official within a county the nature of all of his duties nor to check to see if they are being performed by those officials. We also do not interpret the word "advise" in section 5—205.3 to indicate a responsibility in the superintendent to voluntarily make such detailed explanations. We note that section 5—205.3 has been amended since the collision to condition the duty to advise with the words "when requested in writing" (Ill. Rev. Stat., 1978 Supp., ch. 121, par. 5—205.3). We consider the words to be in keeping with the logical limitation upon the duty to advise which previously existed.

■ We hold that neither Livingston County nor its superintendent of highways had a duty to remove the obstructing tree, see that the highway commissioner did so, order him to do so or explain to him that he had a responsibility to do so. Thus no breach of their duty was a proximate cause of the collision. We thus affirm the judgment rendered in their favor without consideration of the claimed errors.

The judgments on the verdict in favor of defendants Saunemin Township and its highway commissioner are reversed. The judgments on the verdict in favor of defendants Livingston County and its superintendent of highways are affirmed. The case is remanded to the circuit court of Livingston County with directions to enter a judgment in favor of plaintiff and against defendants Saunemin Township and its

highway commissioner on the question of liability and to grant plaintiff a new trial as to those defendants on the question of damages.

Reversed in part, affirmed in part; remanded.

MILLS and CRAVEN, JJ., concur.